# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL MONTELEBRE | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 CV 50057 |
| | ) | Magistrate Judge Iain D. Johnston |
| CAROLYN COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Montelebre brings this action under 42 U.S.C. § 405(g), seeking remand of the decision denying him disability insurance benefits. His main argument is that due to apparent administrative oversight the administrative law judge ("ALJ") never reviewed almost a year's worth of medical records relating to plaintiff's ongoing arm pain. Based on this argument, the case is remanded.

## BACKGROUND

Plaintiff's claim for being disabled rests primarily on his arm problems, particularly his right elbow. He has been diagnosed with bilateral epicondylitis, sometimes referred to as tennis elbow. In 2003, plaintiff injured his elbows in a work-related incident and has suffered pain ever since. In 2004, Dr. Hall performed two surgeries on the right elbow, but they did not stop the pain, which includes radiating pain, tenderness, weakness, numbness, and tingling. Dkt. #8 at 1, 34. Plaintiff claims that the pain has gotten worse over time. At the time of the ALJ hearing, plaintiff was taking various drugs including morphine to address this pain.

This case arises out of plaintiff's second attempt to get disability insurance benefits. He previously filed a claim that was denied by a different ALJ on April 29, 2011. R. 13. Plaintiff

appealed that decision to the Appeals Council, which denied his request. However, plaintiff never appealed the decision to the district court. The parties provide little information about this first attempt to obtain benefits. It is not known whether plaintiff was represented by counsel, and the parties have not supplied the Court with a copy of the earlier ALJ's opinion. The specific reasons for the earlier ruling are thus not known.

Plaintiff filed his second application on May 11, 2011. R. 13. A hearing was held before a new ALJ on January 11, 2013. R. 59. On January 25, 2013, this ALJ found plaintiff was not disabled. The ALJ first noted that plaintiff was barred by the doctrine of res judicata from asserting an onset date before April 30, 2011, the day after the first ALJ's decision. R. 13. As a result, the ALJ's opinion assessed whether plaintiff was disabled during an 11-month window, from April 30, 2011 until March, 31, 2012, plaintiff's last date insured.

The ALJ found that plaintiff had severe impairments of bilateral epicondylitis, chronic pain syndrome, depression, anxiety, and a history of substance. R. 15. The ALJ found that these impairments did not meet a listings requirement.[1] The ALJ next analyzed plaintiff's residual functional capacity and found that he had the capacity to perform light work with the exception that he can only lift ten pounds occasionally and five pounds frequently with his right dominant arm, that he is limited to no more than frequent handling and fingering with his right hand, and that he has the capacity to perform simple instructions. R. 17-18.

The central part of the opinion is the evaluation of plaintiff's pain symptoms in accordance with the factors in SSR 96-7p. The ALJ found that plaintiff's testimony about his pain was less than credible based on several reasons: (1) plaintiff was able to work for a time after his two surgeries and only stopped after being laid off due to lack of work; (2) although

---

[1] The ALJ considered Listing 1.02 for major dysfunction of a joint and also several Section 12 listings for mental impairments. R. 16-17.

plaintiff was taking stronger pain medication more recently, there was no evidence that it was prescribed with "any change or objective worsening" of plaintiff's condition; (3) plaintiff made inconsistent statement regarding alcohol and marijuana use; (4) there was no medical evidence to corroborate plaintiff's claim that his pain had worsened over the last few years; and (5) various medical examinations in early 2010 and into the middle of 2011 suggested that plaintiff's arm limitations were only mild. R. 19-21.

The ALJ gave "great weight" to the opinion of Dr. Ashok Jilhewar, the independent medical expert. R. 22. Dr. Jilhewar testified, among other things, that "there was not sufficient medical evidence to support the claimant's allegations of pain and other symptoms." *Id.* The ALJ gave "little weight" to the opinion of Dr. Hall, plaintiff's treating physician, who opined in 2010 that plaintiff was permanently disabled for both upper extremities. *Id.* In discounting Dr. Hall's opinion, the ALJ first pointed out that his opinion was "encompassed in the claimant's previous unfavorable determination," presumably referring to the doctrine of res judicata mentioned earlier in the opinion. However, the ALJ went on to evaluate Dr. Hall's opinion, finding that Dr. Hall's examination findings, such as a negative Tinel sign, did not support the plaintiff's "subjective reports of pain." *Id.*

## DISCUSSION

Plaintiff asserts two grounds for a remand. First, he argues that a remand is warranted under Sentence Six of § 405(g) because there is supposedly new and material evidence. This evidence consists of 28 pages of medical records from the Crusader Community Health Clinic that plaintiff visited on seven occasions from November 2011 to December 2012. During these visits, he was seen by Dr. Michael Vaewhongs. These records, which are not included in the administrative record, have been attached by plaintiff as an exhibit to his opening brief. *See* Dkt.

# 8 at 14-42. Second, plaintiff argues that a remand is justified separately under Sentence Four because the ALJ failed to give controlling weight to plaintiff's treating physician and did not account for plaintiff's narcissistic personality disorder.

Plaintiff's first argument rests on a simple and undisputed set of facts. On November 20, 2012, plaintiff electronically submitted to the SSA his healthcare records from the Crusader Clinic.[2] This submission was made more than a month before the hearing. For some unknown reason, these records do not appear to have ever made it to the ALJ. Neither the ALJ nor the testifying medical expert mentioned these records at the hearing. The ALJ in his opinion likewise never referred to them. They were not on the exhibit list, and are not in the certified administrative record submitted to this Court. The government does not dispute these facts.

Although the parties disagree on whether the missing records justify a remand, they both proceed on the assumption that this question can be properly analyzed under the criteria for a Sentence Six remand for new evidence. Sentence Six allows the district court to remand without ruling on the merits, and such remands are interlocutory and cannot be appealed. *DeGrazio v. Colvin*, 558 Fed. Appx. 649, 651-52 (7th Cir. 2014). A Sentence Six remand is allowed in two circumstances: "when (1) the Commissioner requests a remand before filing her answer and demonstrates good cause, or (2) there is evidence that is new and material, plus a showing of 'good cause' for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* at 652 (quoting 42 U.S.C. § 405(g)); *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003).

This Court finds that neither circumstance fits here. The first one does not apply for the simple reason that the Commissioner is not requesting a remand. Plaintiff is the party who first

---

[2] According to plaintiff, this fact is proven by the agency's own timestamp – "11/20/2012 at 3:18 PM EST." *See* Dkt. # 8 at 15.

raised the argument under Sentence Six, and the government in its response brief has opposed the request. *See Acevedo v. Barnhart*, 474 F.Supp.2d 1001, 1004 (E.D. Wisc. 2007) ("I have found no case where a sentence six remand due to an incomplete record was granted on the plaintiff's motion alone, and plaintiff cites none. To the contrary, the cases on this issue all appear to involve motions by the Commissioner.") (footnote omitted). As for the second circumstance, it does not apply because the evidence is not new. The Crusader records were in existence and were submitted to SSA before the hearing and before the ALJ issued his opinion. For these reasons, this Court finds that Sentence Six is not the appropriate framework for analyzing this question.

This still leaves the question of how to analyze the problem of the missing records under the traditional Sentence Four framework. The government argues that plaintiff is at fault because his counsel had two opportunities to correct the problem. At the start of the hearing, the ALJ asked plaintiff's counsel whether the record was complete. Counsel raised no objection. The government believes that plaintiff's counsel should have realized that the ALJ did not have the Crusader records at this time. The government separately contends that plaintiff's counsel could have raised the issue when he filed his appeal letter to the Appeals Council. Relying on the Sentence Six requirement that the party seeking a remand for new evidence must show "good cause," the government argues that plaintiff is at fault for not fixing the problem on either of these two occasions. The government is essentially arguing (without explicitly saying so) that plaintiff waived any right to complain about the missing records.

The Court is not persuaded by this implied waiver argument. The government cites to no authority to support its argument. *See* Dkt. # 10 at 5-6. In fact, although not mentioned by the government, the Seventh Circuit has held that "the failure to assert an argument at the Appeals

Council does not operate as a waiver of that claim." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2009); *Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999) ("The Social Security Administration knows how to draft a waiver rule. If courts take it upon themselves to adopt waiver rules for the agency that compel disappointed applicants for disability benefits to bombard the Appeals Council with full briefs in order to preserve their right to judicial review, we shall be disserving the agency."). Based on these cases, the Court is not inclined to find that plaintiff waived this argument at the Appeals Council level.

As for the failure to object at the start of the hearing, plaintiff responds that "the ALJ simply asked at the hearing if Mr. Montelebre's counsel had any objection to the exhibits in the file, which is not related to whether the exhibits in the file included the records which Mr. Montelebre's counsel had good reason to believe were in the file." Dkt. #11 at 4. Plaintiff thus argues that his counsel "was not aware that the agency had misplaced the records." *Id.* After reviewing the transcript, this Court has no basis for disputing plaintiff's assertion. Again, other than merely invoking the phrase "good cause" applicable to Sentence Six remands, the government cites to no cases to support its claim that a waiver occurs in this type of situation.[3]

Accordingly, this Court concludes that the best way to assess the missing records is to treat them as evidence that the ALJ failed to discuss or analyze in his opinion. This is a fairly common scenario. As the Seventh Circuit has stated on numerous occasions, an ALJ need not discuss every piece of evidence but also "may not ignore entire lines of contrary evidence."

---

[3] The Court notes that at the hearing, plaintiff testified that he was currently taking morphine for his pain. The ALJ then asked him when he last saw his doctor. Plaintiff answered: "Maybe three weeks ago." R. 39. Given that the hearing took place on January 11, 2013, this would mean that the ALJ knew that plaintiff had seen a doctor in late December 2012. Yet, the ALJ never inquired about these records at the hearing, and his opinion never references any doctor visits after August 2011.

*Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir.2012); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.2004) ("Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.").

The government argues that the Crusader records are not material and would not have made a difference to the ALJ. The government asserts two arguments for this conclusion. First, the government argues that some of the Crusader visits were after March 31, 2012, when plaintiff's insured status expired. Specifically, five of the seven visits during 2012—those in May, August, October, November, and December—were after the date last insured. The government asserts that these visits thus "have limited relevance." Dkt. #10 at 4.

As is evident by the word "limited," the government recognizes that such evidence may be relevant to some degree. The Seventh Circuit has held that evidence after the date last insured may be relied on to show the claimant's condition within the relevant period. *See Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012) (the government's argument that evidence after the date last insured is irrelevant is "an argument that both is factually mistaken and violates the *Chenery* rule, because the administrative law judge ruled that [medical data after the date last insured] *could* be considered—and he was right") (emphasis in original); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of claimant's condition during that period."). Here, two of the seven visits were inside the relevant period. The other visits began only a few months after the end of the period and thus were not remote in time. The only case the government cites to the contrary is *Schmidt v. Barnhart*, 395 F.3d 737 (7th Cir. 2005).

However, the evidence in *Schmidt* was much farther removed in time – from one to three years after the ALJ rendered his decision. *Id.* at 742.

Second, the government argues that the evidence is not material because it is essentially cumulative of the earlier medical reports such that the ALJ would not have found it to be significant. In their briefs, the parties argue whether the observations made by Dr. Vaewhongs in 2012 about plaintiff's right arm flexibility and the degree of his pain are significantly different from earlier assessments. At this point, this Court need not sort through these arguments and counter-arguments because it finds that even if this evidence is duplicative to some degree (as the government contends), the ALJ still *might* find it relevant based on the reasons he gave for finding plaintiff not disabled.

Plaintiff testified at the hearing, which took place in January 2013, that his right arm pain had "definitely . . . gotten worse" over the "last year." R. 40. This would mean that pain had gotten worse sometime over the course of 2012, and perhaps earlier. The ALJ in his opinion discounted this testimony, in part, based on the fact that plaintiff had provided no corroborating medical evidence. This point was raised three times by the ALJ in his opinion:

> **At R. 19:** [Plaintiff] also testified that he is currently taking morphine, which as the medical expert points out, was only prescribed after the claimant asked for stronger pain medication and was not prescribed in conjunction with any change or objective worsening of the claimant's condition.
>
> **At R. 20:** The claimant testified that his condition has worsened over the past few years, but there is no objective medical evidence to corroborate these allegations.
>
> **At R. 21:** Dr. Jilhewar testified that there was not sufficient objective medical evidence to support the claimant's allegations of pain and other symptoms [.]

As an initial point, although not raised by plaintiff, the ALJ's analysis seems to rest on the faulty premise that a plaintiff must provide objective evidence, such as an MRI scan, to

corroborate his pain symptoms. As the Seventh Circuit has emphasized in recent opinions, Social Security Regulation 96-7p(4) provides that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, __ F.3d __, 2015 WL 727962, *2 (7th Cir. Feb. 20, 2015) ("an administrative law judge may not deny benefits on the sole ground that there is no diagnostic evidence of pain"); *Adaire v. Colvin*, __ F.3d __, 2015 WL 678735, *2 (7th Cir. Feb. 18, 2015) ("[The ALJ's] principal error, which alone would compel reversal, was the recurrent error made by the Social Security Administration's administrative law judges, and noted in many of our cases, of discounting pain testimony that can't be attributed to 'objective' injuries or illnesses—the kind of injuries and illnesses revealed by x-rays.").

As the above quotations illustrate, the ALJ clearly put some weight on the lack of recent medical records to corroborate (a word the ALJ used) plaintiff's subjective pain. That this fact was mentioned three times suggests the ALJ found it significant. The Crusader records arguably address this issue. These records are the most recent records and cover the very time period the ALJ was concerned about. They also could potentially illuminate plaintiff's claim that the pain was worsening. For example, these records show that on May 9, 2012 Dr. Vaewhongs decided that plaintiff should "start morphine sulfate controlled release." Dkt. #8 at p.34.

In sum, the Court finds that the missing medical records are potentially relevant to one of the key reasons the ALJ articulated to find plaintiff not disabled. Because the ALJ did not discuss these records or even see them insofar as this Court can determine, the ALJ's conclusion is not based on the "full range of medical evidence" and this Court cannot conclude that he built a logical bridge from this evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th

Cir. 2001) ("Here, we are unable to tell whether the ALJ investigated 'all avenues' that relate to [plaintiff's] complaints of pain because her decision offers no clue as to whether she *examined* the full range of medical evidence as it relates to his claim.") (emphasis in original). It is true that the ALJ relied on several other reasons and also true that arguments could be made as to why the Crusader records are perhaps not significantly different from earlier reports. However, as the *Chenery* doctrine counsels, it is important that the ALJ confront this evidence in the first instance rather than having the government make arguments after the fact.

Having found a remand is warranted based on these missing records, the Court will only briefly comment on plaintiff's remaining arguments. Plaintiff has argued that the ALJ failed to give controlling weight to plaintiff's treating physician (Dr. Hall) who opined in 2010 that was disabled. Plaintiff also complains that the ALJ failed to acknowledge the diagnosis of Dr. Peggau, a psychologist who opined in April 2010 that plaintiff had narcissistic personality disorder.

These arguments are complicated by a second unusual feature in this case. These opinions were rendered before the first ALJ's opinion. The ALJ noted early in his opinion that plaintiff was barred by res judicata from asserting that he was disabled before April 30, 2011, and he stated later in his opinion that Dr. Hall's opinion was "encompassed" in the ALJ's earlier decision. It is not entirely clear what the ALJ specifically meant by this statement as he then went on to analyze Dr. Hall's opinion, giving it only "limited weight." The parties debate what weight, if any, can be given to these earlier medical opinions in light of the doctrine of res judicata. The government argues basically that this decision forecloses any reliance on these opinions, while plaintiff states that there is no "absolute bar" against relying on those opinions now. Both sides cite to the same Seventh Circuit decision – *Groves v. Apfel*, 148 F.3d 809 (7th

Cir. 1998) – to support their arguments. To guide the parties on remand, it is worth quoting at some length from this decision:

> [Plaintiff] also argues, correctly but irrelevantly, that the district judge should not have refused to look at the medical evidence submitted in connection with her first application for benefits. The argument is correct because although the final judgment denying that application was res judicata, this did not render evidence submitted in support of the application inadmissible to establish, though only in combination with later evidence, that she had become disabled after the period covered by the first proceeding. Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994. What is true is that under the collateral estoppel branch of res judicata, the judgment denying the earlier claim may bar the relitigation of issues essential to the second claim as well. But it need not, especially when the disabling condition is progressive; for in that event there is no necessary inconsistency in finding an applicant not disabled at time *t* but disabled at *t+1*. There thus is no absolute bar to the admission in the second proceeding of evidence that had been introduced in the prior proceeding yet had not persuaded the agency to award benefits. The "readmission" of that evidence is barred only if a finding entitled to collateral estoppel effect establishes that the evidence provides no support for the current claim. That would be true if the earlier evidence had been found unworthy of belief. This is not what happened here. The earlier evidence just wasn't strong enough *by itself* to establish disability. It still might reinforce or illuminate or fill gaps in the evidence developed for the second proceeding.

*Id.* at 810-811 (emphasis in original) (citations omitted). Based on this passage, plaintiff will not be able to prove disability by simply pointing to Dr. Hall's opinion and arguing that it should, by itself, have controlling weight. Instead, plaintiff will have to rely on this opinion in conjunction with other evidence, such as perhaps the Crusader records, to show that his condition became worse after April 29, 2011 and rose to the level required to establish that he was disabled.

## CONCLUSION

For the reasons given, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: February 27, 2015         By: _____
                                    Iain D. Johnston
                                    United States Magistrate Judge